FILED
2021 SEP 2
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRENT THAYNE,<br><br>       Plaintiff,<br><br>v.<br><br>PLEASANT GROVE CITY, TANNER MARTIN, JOSEPH HAWS, AUSTIN EDWARDS, MAKOLSON ANTOINE, and DOMONIC ADAMSON,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00581-JNP-JCB<br><br>District Judge Jill N. Parrish |

Before the court is a Motion for Summary Judgment (the "Motion") filed by Defendants Pleasant Grove City ("Pleasant Grove") and Officers Tanner Martin ("Officer Martin"), Joseph Haws ("Officer Haws"), Austin Edwards ("Officer Edwards"), Makolson Antoine ("Officer Antoine"), and Domonic Adamson ("Officer Adamson").[1] ECF No. 44. The court entertained oral argument on the Motion on August 10, 2021. Having carefully reviewed the parties' memoranda[2] and the relevant law and considered the oral arguments raised, the court grants the Motion.

---

[1] All officer defendants will be referred to collectively as the "Officer Defendants." Pleasant Grove and the Officer Defendants will be referred to collectively as "Defendants."

[2] The court considered the Supplement to Defendants' Motion for Summary Judgment (ECF No. 52) as well as the case law provided in the Notice of Supplemental Authority in Support of Defendants' Motion for Summary Judgment (ECF No. 53). No objection was made to the substance or consideration of either filing.

At oral argument, the court noted that Plaintiff had failed to file exhibits that were referenced in his Memorandum in Response to Defendants' Motion for Summary Judgment (ECF No. 55). The court directed Plaintiff's counsel to file the exhibits as soon as possible if he wanted the court to

## BACKGROUND[3]

The facts giving rise to this litigation trace back to December 14, 2017. On that day, Plaintiff Trent Thayne ("Mr. Thayne") was in the hospital with pneumonia when he received a phone call from his daughter-in-law, Serena Thayne ("Serena"). Serena told Mr. Thayne that his son, Nickolas Thayne ("Nickolas"), had not returned home after going to American Fork Canyon (the "Canyon") to test drive a car on which he had been working. The test drive should have only taken fifteen minutes, but about an hour had passed and Nickolas had not returned home. Serena and Mr. Thayne called local police departments for assistance in locating Nickolas. The Pleasant Grove Police Department (the "PGPD") advised Serena and Mr. Thayne that the PGPD could only act once a person had been missing for forty-eight hours. Serena and Mr. Thayne requested that the PGPD send a police car into the Canyon for a wellness check, but the PGPD declined to do so because the Canyon was outside of its jurisdiction. Mr. Thayne checked himself out of the hospital to search for his son.

---

consider them in ruling on the Motion. As of the date of issuance of this Memorandum Decision and Order, no supplemental exhibits have been filed.

[3] In determining whether qualified immunity applies, the court "ordinarily accept[s] the plaintiff's version of the facts—that is, 'the facts alleged.'" *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016) (quoting *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)). But "because at summary judgment [the court] [is] beyond the pleading phase of the litigation, [the] plaintiff's version of the facts must find support in the record." *Id.* (quoting *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009)). Accordingly, if the plaintiff's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Thomson*, 584 F.3d at 1312 (citation omitted). In recounting the background facts in this case, the court relied upon the parties' memoranda in addition to the deposition transcripts, declarations, video footage, call records, statements, reports, and records that the parties attached to their memoranda. To the extent that the plaintiff's version of the facts contradicts or is unsupported by this body of evidence, the court does not adopt his version.

Nickolas and his vehicle were ultimately found in the American Fork River in American Fork Canyon; Nickolas had died. Upon Mr. Thayne's arrival at American Fork Canyon, he ran toward the scene. Police officers prevented him from approaching where his son was found. Mr. Thayne became angry and directed expletives and other harsh comments at the police officers, struggled against them, and tried to get past them. The police officers restrained him, taking him to the ground. Mr. Thayne passed out and was placed in an ambulance. When he was stable, Mr. Thayne exited the ambulance, was prevented from approaching the scene again, and then left the scene and began walking home. Mr. Thayne's brother, Todd Thayne ("Todd"), had arrived at the scene at this time and followed Mr. Thayne in his truck as Mr. Thayne left the scene on foot. On his way out, Mr. Thayne directed more expletives and harsh comments to police officers as he passed by. Only one police officer responded to Mr. Thayne's comments. Mr. Thayne did not hear this police officer's response, but Todd did. Todd states that the police officer was an American Fork police officer who said something like, "It'll catch up to you, too," or "It's going to come back on you" in response to Mr. Thayne's statements. ECF No. 44-7 at 15, 16. Officers Martin, Haws, and Adamson did not respond to the scene of Nickolas's death. Officer Antoine was not involved in the incident with Mr. Thayne's son. Officer Edwards does not recall having any personal interaction with Mr. Thayne prior to December 17, 2017.

When Mr. Thayne arrived at his home, Todd called their father, who told Todd to "make sure [Mr. Thayne] doesn't do anything stupid," and to take away Mr. Thayne's guns if he has any. ECF No. 44-7 at 21. After an argument and brief physical struggle between Mr. Thayne and Todd, Todd was able to remove some of Mr. Thayne's guns from his home. Mr. Thayne's girlfriend was also at Mr. Thayne's home, "trying to calm him down from going out and shooting people." *Id.* at 23. Mr. Thayne's daughter-in-law ultimately called the police that night because Mr. Thayne "had

3

a gun and was hysterical." ECF No. 44-8 at 4. Pleasant Grove police officers were dispatched to Mr. Thayne's home. Officer Martin was one of the officers dispatched to Mr. Thayne's home, but he did not have any direct interaction with Mr. Thayne on this evening. ECF No. 44-9 at 82. Officers Haws, Antoine, and Adamson did not respond to the incident at Mr. Thayne's home. As previously stated, Officer Edwards does not recall having any personal interaction with Mr. Thayne prior to December 17, 2017.

On December 17, 2017, a citizen named Melissa Hruban ("Ms. Hruban") called 911 to report a driver in an older-model, off-white BMW. Ms. Hruban communicated that she saw the driver in Pleasant Grove on Canyon Road passing Discovery Park and heading southbound. She stated that she did not know if the driver was "drunk or road raging," but that the driver was "swerving" and "riding peoples [sic] tails." ECF No. 44-10 at 2. She said that the driver was about to pass Pleasant Grove Junior High and "illegally passed somebody getting into the opposite lane of traffic." *Id.* At this time, Ms. Hruban did not know the license plate number associated with the car, did not know how many people were in the car, and did not see the driver. However, she did provide her full name to dispatch, who said that there was an officer on the way to "check the area." *Id.* Dispatch radioed officers about Ms. Hruban's 911 call, informing them of the white, older-model BMW with unknown plates heading southbound on Canyon Road that was swerving and passing the Junior High.

Shortly thereafter, Ms. Hruban called 911 again to follow up on her prior report of a "reckless, possibly drunk driver." ECF No. 44-12 at 2. Ms. Hruban informed dispatch that she and her husband had pulled into an Auto Zone parking lot and saw the same BMW parked at a Maverik gas station. Ms. Hruban provided the BMW's license plate number to dispatch and a physical description of the driver and stated that the driver "look[ed] like he might be intoxicated" based

4

on his facial expression. ECF No 44-12 at 2.[4] Dispatch passed along the driver's updated location to the field officers, along with Ms. Hruban's description of the driver and that he "look[ed] intox." ECF No. 52-1 at 17. Based on the license plate Ms. Hruban provided, dispatch identified the driver as Mr. Thayne and notified the field officers. Dispatch relayed that the system indicated that Mr. Thayne had previously threatened officers and confirmed that Pleasant Grove had responded to a morning call involving Mr. Thayne two days prior. Upon hearing this information, Officer Martin confirmed that he would like a second unit and requested a third.

Officer Martin arrived at the Maverik gas station and approached the BMW as Mr. Thayne was exiting the gas station. Officer Martin made verbal contact with Mr. Thayne and told him that he was there to check on Mr. Thayne's welfare and on the welfare of others. Mr. Thayne yelled expletives at Officer Martin and told him to "get away from [him]," that he was leaving, and that "there's no reason for you to harass me, leave me alone." ECF No. 44-1 at 87. Officer Martin told Mr. Thayne not to leave, and that if he left, he would be pulled over. Officer Haws arrived as Mr. Thayne was walking back to his vehicle. While Officer Haws was present, Officer Martin told Mr. Thayne not to get into his vehicle. Mr. Thayne got into his vehicle and left anyway. Officer Martin notified other officers via radio that Mr. Thayne was leaving. Officer Martin also asked to verify if the "complainant witness"—Ms. Hruban—would be willing to sign a witness statement. ECF No. 44-9 at 27. Ms. Hruban was willing and did so the same day.

Officers Antoine and Edwards responded to the radio call upon learning that Mr. Thayne was the driver. They did so because they wanted to make sure that "Officer Martin was going to

---

[4] Ms. Hruban's husband had been the one to see the driver, and he provided the description to Ms. Hruban, who in turn relayed the information to dispatch.

be safe while he interacted with Mr. Thayne" because a couple of days prior, there had been a call in which Mr. Thayne "had made death threats to his family, towards law enforcement." ECF No. 44-3 at 37. Officers Antoine and Edwards arrived at the Maverik gas station just as Mr. Thayne was leaving and began to pursue Mr. Thayne. Officer Haws began following Mr. Thayne as well. Officer Martin was going after Mr. Thayne "because he had left an incident and was not free to leave." ECF No. 44-9 at 32. The officers followed Mr. Thayne in his BMW for approximately three minutes. Officers Antoine and Edwards had their lights and sirens activated. Although Mr. Thayne could see that officers following him had their lights activated, he did not pull over and was headed toward the freeway.

Mr. Thayne stopped at a red light at the busy intersection of Pleasant Grove Boulevard and 1000 South. The officers pulled behind and beside Mr. Thayne's vehicle. Officer Antoine approached Mr. Thayne's car on the driver's side with his gun drawn and ordered Mr. Thayne to show his hands and get out of his vehicle. Mr. Thayne repeatedly refused to get out. Officer Martin also approached the driver's side of Mr. Thayne's vehicle with his gun drawn and ordered Mr. Thayne to show them his hands and exit his vehicle. Mr. Thayne cursed at the officers. Officer Haws began approaching the passenger side of Mr. Thayne's vehicle with his gun drawn but made no orders. Once the officers determined that Mr. Thayne did not have any active weapons in his hands, they holstered their weapons. Officers Antoine and Martin then opened Mr. Thayne's car door, extracted him from the vehicle, and attempted to handcuff him.

Mr. Thayne went onto the ground, face-down, with his arms pinned under his chest. Mr. Thayne was screaming and shouting profanities at the officers, saying that they killed his son. Mr. Thayne held his arms clenched into his chest area and would not put his hands behind his back despite the officers' commands to put his hands behind his back and stop resisting. Mr. Thayne's

6

body was tense. He was flailing and kicking his legs and attempting to bring his legs into a fetal position, which appeared to be an attempt to maneuver out of officer control. Mr. Thayne lifted his head off the ground, and Officer Edwards "pin[ned] his head back down to the ground to keep him from trying to get up or fight." ECF No. 44-6 at 36. It was "quite a wrestling match" as the officers struggled to get Mr. Thayne's hands in a position to put handcuffs on him and keep him from moving, "[e]specially until [they] could find out whether he was armed or not." *Id.* at 53. Officers tried to pull Mr. Thayne's arms out from under him to put on handcuffs. When Officer Haws tried to pull Mr. Thayne's arm out, Mr. Thayne "would pull it back to himself." ECF No. 44-5 at 101. When Officer Haws was able to pull Mr. Thayne's arm out, Mr. Thayne had his phone in his hand, and Officer Haws "took his phone from his hand and set it off to the side on the ground." ECF No. 44-5 at 75. Once the officers were able to handcuff Mr. Thayne, they rolled him from side to side to search him and "make sure he didn't have any weapons on his person, his waistband, or in his pockets." ECF No. 44-3 at 39. Mr. Thayne was then placed in a seated position, and the officers called for medical assistance upon seeing that Mr. Thayne had a cut above his eye. Mr. Thayne was moved and seated on the grass on the side of the road. Once the ambulance arrived, Mr. Thayne spoke to the medics, and passed out. Mr. Thayne's handcuffs were removed, and he was taken to the hospital. Officer Antoine rode in the ambulance with him. Officers Martin and Adamson went to the hospital as well.

Mr. Thayne has testified that "[f]rom the time [the officers] pulled [him] out and put [him] on the ground until the time [he] basically was pulled up, sat up and handcuffed behind the back, [he] do[es]n't remember a whole lot of [what happened on the ground] other than the pressure." ECF No. 44-1 at 111. He testified that he does not remember whether he pulled or tried to pull his arms or hands underneath his body. *Id.* He testified that he does not remember the specifics of what

7

occurred as the officers were trying to put him in handcuffs. *Id.* 111–12. He testified that he is "sure" that he lifted his head up and that he "probably" did so. *Id.* at 103, 105. Mr. Thayne testified that he does not know what occurred between the time he was seated on the curb and he came to in the ambulance. *Id.* at 115. But Mr. Thayne contends that he was tased during this time based on two circular marks on his neck that can be seen in his booking photo. Mr. Thayne did not see anyone tase him and said that "[n]obody saw anybody tase [him]" and he had "[n]o idea" who tased him. *Id.* at 116–17. Each of the Officer Defendants stated that he did not have a taser on December 17, 2017, and each stated that he did not tase Mr. Thayne.

Officer Haws performed an inventory search of Mr. Thayne's car and completed an impoundment of the vehicle. There was "wear and tear on the inside and the outside of the vehicle," and the vehicle was "messy." ECF No. 44-5 at 74. Mr. Thayne contends that the officers "ripped [his] receipts out, . . . ripped [his] center console out, . . . ripped the back lining of [his] seats out," but testified that he did not see any of the officers do that and does not have any witnesses who saw the officers do that. ECF No. 44-1 at 162–64. Each of the officers stated that they did not damage Mr. Thayne's car in any way on December 17, 2017.

At the hospital, Officer Martin requested a warrant to draw Mr. Thayne's blood since it was believed that he had been driving under the influence. The blood draw was unsuccessful. Officer Martin obtained a warrant for a urine sample, and Mr. Thayne provided a urine sample. Once Mr. Thayne was medically cleared, Officer Martin escorted Mr. Thayne to the Utah County Jail for booking. An initial screen of the urine sample revealed positive results for THC and barbiturates. ECF Nos. 55-1 at 13, 55-3.  The results from the urine sample later tested by the Utah Department of Health were positive for methamphetamine and THC-COOH, "the primary metabolite of

marijuana." ECF No. 44-21 at 2–3. The toxicology results from the urine sample taken in the emergency room do not reference methamphetamine or THC. ECF No. 44-22 at 2.

As a result of what transpired on December 17, 2017, the Utah County Attorney's Office charged Mr. Thayne with three counts: (1) failure to respond to officer's signal to stop in violation of UTAH CODE § 41-6a-210; (2) driving under the influence of alcohol and/or drugs in violation of UTAH CODE § 41-6a-502; and (3) interference with arresting officer in violation of UTAH CODE § 76-8-305. Pursuant to a plea agreement, Mr. Thayne ultimately pleaded guilty to "fail to stop at command of police," and the other two counts were dismissed. ECF No. 44-28 at 2.

In this case, Mr. Thayne asserts the following causes of action: (1) malicious prosecution under 42 U.S.C. § 1983 against the Officer Defendants; (2) unlawful seizure against the Officer Defendants; (3) excessive force against the Officer Defendants based on conduct alleged to have occurred during Mr. Thayne's arrest; (4) excessive force against the Officer Defendants for tasing Mr. Thayne while he was seated on the side of the road; (5) violation of his substantive due process rights against the Officer Defendants; (6) conspiracy under 42 U.S.C. § 1985 against the Officer Defendants; (7) retaliation for exercise of free speech under § 1983 against the Officer Defendants; and (8) unconstitutional policies, practices, and procedures and failure to monitor and train against Pleasant Grove. Defendants move for summary judgment on each of Mr. Thayne's causes of action under Federal Rule of Civil Procedure 56 and based on qualified immunity.

## LEGAL STANDARDS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the

9

burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted). "At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). Rather, the court must "construe the evidence in the light most favorable to . . . the nonmoving party." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted).

"42 U.S.C. § 1983 allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 459 (10th Cir. 2013). "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Burke v. Regalado*, 935 F.3d 960, 1001–02 (10th Cir. 2019) (citation omitted). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 1002 (citation omitted). "A defendant's motion for summary judgment based on qualified immunity imposes on the plaintiff 'the burden of showing both (1) a violation of a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation.'" *Id.* (citation omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155

(10th Cir. 2010) (citation omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (citation omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

## ANALYSIS

Defendants move for summary judgment on each of Mr. Thayne's claims against them, arguing that he cannot establish a violation of his constitutional rights. Defendants further argue that even if Mr. Thayne can establish a violation of his constitutional rights, the Officer Defendants are entitled to qualified immunity under the second prong of the two-part qualified immunity analysis—the clearly established law prong—and that Mr. Thayne has failed to establish municipal liability for Pleasant Grove.[5] Mr. Thayne does not respond to each of Defendants' arguments, instead summarily calling for the court to "deny the Defendants' Motion for Summary Judgment on the issues of excessive force, evidence, municipal liability and punitive damages." ECF No. 55 at 38. The court considers the parties' arguments below.

## I.     First, Second, Fifth, Sixth, and Seventh Causes of Action

Defendants argue that Mr. Thayne has failed to establish the requisite constitutional violations for his malicious prosecution claim (first cause of action), unlawful seizure claim

---

[5] Defendants alternatively move for summary judgment on Mr. Thayne's requests for injunctive relief, declaratory relief, and punitive damages. Because the court finds, as set forth below, that Defendants are entitled to qualified immunity and summary judgment on all of Mr. Thayne's claims, the court does not reach these issues.

(second cause of action), substantive due process claim (fifth cause of action), civil conspiracy claim (sixth cause of action), and free speech retaliation claim (seventh cause of action), thereby entitling Defendants to qualified immunity under the first prong of the qualified immunity analysis. In his response brief, Mr. Thayne does not engage with any of Defendants' arguments related to his first, second, sixth, or seventh causes of action, much less argue that Defendants' alleged conduct pertaining to each cause of action (1) amounts to a violation of a constitutional right that (2) was then clearly established. *See Burke*, 935 F.3d at 1002 (citation omitted). And with respect to Mr. Thayne's fifth cause of action for violation of his substantive due process rights, Mr. Thayne limits his arguments to Defendants' alleged tampering with his urine sample. Mr. Thayne concludes his response brief by asking the court to deny summary judgment only "on the issues of excessive force, evidence, municipal liability and punitive damages." ECF No. 55 at 38.

Mr. Thayne has failed to carry his two-part qualified immunity burden with respect to his first, second, sixth, and seventh causes of action in their entirety. Mr. Thayne has also failed to carry this burden with respect to his fifth cause of action, except as it relates to Defendants' alleged tampering with his urine sample.[6] At oral argument, counsel for Mr. Thayne agreed that the only

---

[6] In his response brief, Mr. Thayne failed to respond to Defendants' assertion of qualified immunity based on Mr. Thayne's substantive due process claim that Defendants tampered with and damaged his cell phone. At oral argument, counsel for Mr. Thayne raised some arguments regarding Mr. Thayne's assertion that Defendants had tampered with and damaged his phone. But Mr. Thayne still failed to carry his qualified immunity burden. He failed to establish a constitutional violation and cited no authority to satisfy the clearly established law prong.

Mr. Thayne's assertion that Defendants tampered with and damaged his phone is without sufficient evidentiary support to survive summary judgment. Mr. Thayne relies upon speculation and inference to support his claim that his phone was tampered with and damaged, citing his own testimony that he left his phone on the center console of his vehicle as it was recording, and that his phone was in the exclusive possession of Defendants from that point until he retrieved his phone on January 11, 2018, at which point the phone was "unusable." But Defendants have provided ample evidence that none of the Officer Defendants tampered with or damaged Mr.

remaining live claims were his excessive force claims, failure to provide evidence claim, evidence tampering claim, and municipal liability claim. The Officer Defendants are accordingly entitled to qualified immunity and summary judgment on Mr. Thayne's first, second, sixth, and seventh causes of action and on Mr. Thayne's fifth cause of action except as it relates to Defendants' alleged tampering with his urine sample, which the court addresses below. *Gutierrez v. Cobos*, 841 F.3d 895, 901 (10th Cir. 2016) (affirming district court's grant of defendant's motion for summary judgment when plaintiffs "did not present any legal authority or legal argument to the district court in opposition to [the defendant's] motion for summary judgment based on qualified immunity" and plaintiffs thereby "did not meet their burden to show a constitutional violation based on clearly established law").[7]

---

Thayne's phone: no one has reviewed Mr. Thayne's phone to determine whether any portion of the recording has been deleted (ECF No. 44-1 at 158–59); the phone is now unusable according to Mr. Thayne (*see id.*) and so cannot be reviewed; and none of the Officer Defendants accessed the contents of Mr. Thayne's phone, altered or deleted any recording on the phone, or smashed or otherwise intentionally destroyed the phone (ECF Nos. 44-20 ¶¶ 7–8, 44-17 ¶¶ 8–9, 44-18 ¶¶ 8–9, 44-19 ¶¶ 8–9; 44-4 ¶¶ 13–14. Defendants also point to Officer Martin's dash camera footage, which appears to show that Mr. Thayne had his cellphone in his hand when he was extracted from his vehicle. ECF Nos. 44-16, 59 at 16–17. The only evidence that Mr. Thayne offers in response is that the Pleasant Grove Incident Report related to the December 17, 2017 incident states that Officer Martin obtained a warrant to search Mr. Thayne's phone. ECF No. 55-1 at 27. But Defendants have submitted a declaration from Officer Martin that states that he was unable to access the contents of Mr. Thayne's phone because it was password-protected, and so they returned the phone to Mr. Thayne without searching it. ECF No. 59-2 ¶¶ 5–7. Accordingly, the court finds that Mr. Thayne has failed to provide sufficient evidence supporting his claim on which a rational jury could find in his favor.

[7] Defendants' arguments regarding the multiple bases upon which these causes of action fail to state violations of Mr. Thayne's constitutional rights were well-briefed. The court is persuaded that they provide alternate bases for its ruling.

## II.   Third and Fourth Causes of Action: Excessive Force

Defendants seek qualified immunity on Mr. Thayne's third and fourth causes of action. Mr. Thayne's third cause of action asserts an excessive force claim against the Officer Defendants for their conduct in arresting him. His fourth cause of action asserts a second excessive force claim against the Officer Defendants for allegedly tasing him after he had been handcuffed and seated on the side of the road. The court addresses both causes of action below, beginning with the fourth cause of action.

### A.   Alleged Tasing

Mr. Thayne asserts that after he was placed in handcuffs and seated on the side of the road "an unknown Defendant tased [him] on the neck." ECF No. 2 ¶ 118. Mr. Thayne's response brief is not any more specific as to who tased him, stating only that "somebody used a stun device on him." ECF No. 55 at 27. Further, in response to Defendants' contention that there is no evidence that any of the Officer Defendants used a taser on Mr. Thayne, Mr. Thayne's only response is to cite photographs taken of him the day after the December 17, 2017 incident, which show "two round wound marks on [Mr.] Thayne's neck." *Id.* at 13. But Mr. Thayne testified in his deposition that he does not remember what occurred between the time he was seated on the curb and he came to in the ambulance and that he did not see anyone tase him, no one saw someone tase him, and he had "[n]o idea" who tased him." ECF No. 44-1 at 115–17. In short, Mr. Thayne's excessive force claim based on an alleged tasing is supported by nothing more than speculation and inference. And that speculation and inference are belied by the Officer Defendants' depositions and declarations in which they state that they neither had tasers at the scene, nor did they tase Mr. Thayne.

Based upon the foregoing, the court finds that no "reasonable jury could find facts supporting" an excessive force claim based on an unidentified Officer Defendant allegedly tasing

Mr. Thayne. *See Est. of Booker*, 745 F.3d at 411; *see also Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise. Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (citations omitted)). Accordingly, Defendants are entitled to qualified immunity and summary judgment on Mr. Thayne's fourth cause of action.

B.     Arrest

"*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of '"the nature and quality of the intrusion on the individual's Fourth Amendment interests"' against the countervailing governmental interests at stake." *Id.* at 396 (citation omitted). The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* The Fourth Amendment "reasonableness" inquiry "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Further, the "reasonableness" of the force used is determined through an objective lens and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "without regard to [the officer's] underlying intent or motivation." *Id.* at 396–97. In assessing Mr. Thayne's excessive

force claim based on the Officer Defendants' conduct in extracting him from his vehicle and handcuffing him, the court considers each of the three *Graham* factors in turn.

        1)      Severity of the Crime

Here, the Officer Defendants suspected that Mr. Thayne was driving under the influence of drugs or alcohol. Under Utah law, such an offense is a class B misdemeanor. UTAH CODE § 41-6a-502. Mr. Thayne had also left the Maverik gas station against Officer Martin's commands as Officer Martin was attempting to effect an investigatory detention, which is a class B misdemeanor under UTAH CODE § 76-8-305. Finally, Mr. Thayne failed to stop his car and pull over to the side of the road even though he saw that officers had their lights activated, which is a third degree felony under UTAH CODE § 41-6a-210(1). "[T]he first *Graham* factor may weigh against the use of significant force if the crime at issue is a misdemeanor." *Lee v. Tucker*, 904 F.3d 1145, 1149 (10th Cir. 2018); *see also Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020) ("Under the first [*Graham*] factor, a 'minor offense . . . support[s] the use of minimal force.'" (citation omitted)). But when a suspected crime is a felony, such "generally tilts the first *Graham* factor against the arrestee." *Edwards v. City of Muskogee, Okla.*, 841 F. App'x 79, 84 (10th Cir. 2021) (unpublished) (citing *Est. of Valverde ex rel. Padilla v. Dodge*, 967 F.3d 1049, 1061 n.2 (10th Cir. 2020)). Here, although two of the offenses were misdemeanors that would weigh against the use of significant force, one of the offenses was a felony. Thus, the first *Graham* factor weighs against Mr. Thayne. And even if the first *Graham* factor weighs in Mr. Thayne's favor, the remaining factors weigh strongly in the Officer Defendants' favor.

        2)      Immediacy of Threat to Safety of Officers or Others

"The second *Graham* factor, whether the suspect posed an immediate threat to the safety of the officers or others[,] is undoubtedly the most important." *Emmett v. Armstrong*, 973 F.3d

1127, 1136 (10th Cir. 2020) (citation omitted). "Under the second [*Graham*] factor, an officer may use increased force when a suspect is armed, repeatedly ignores police commands, or makes hostile motions towards the officer or others." *Donahue*, 948 F.3d at 1196. In evaluating this factor, the court "must look at whether the officers [or others] were in danger at the precise moment that they used force." *Emmett*, 973 F.3d at 1136 (alteration in original) (citation omitted).

Here, although the Officer Defendants determined that Mr. Thayne did not have any weapons in his hands, they were unsure as to whether he had "any weapons on his person, his waistband, or in his pockets." ECF No. 44-3 at 39. Additionally, Mr. Thayne had repeatedly ignored police commands—he ignored Officer Martin's command not to leave the Maverik gas station, and he did not pull his car over to the side of the road even though he saw that officers following him had activated their lights. Mr. Thayne stopped his car at a red light near a busy intersection and intended to proceed onto the highway, adding to the threat to officer safety and the safety of others. When the officers extracted Mr. Thayne from his car, he struggled against them. His body was tense, he kept his arms pinned underneath his chest as he was face-down on the ground. Even as officers on both sides of him tried to pull Mr. Thayne's arms out from under his chest, he pulled them back under himself. He would not put his hands behind his back so that the officers could handcuff him. Mr. Thayne kicked his legs and flailed, and attempted to move into a fetal position, which can be a means of trying to escape officer control. Mr. Thayne lifted his head up, and Officer Edwards pinned it down to the ground to prevent him from getting up to fight. All the while, Mr. Thayne was shouting profanities at the officers, saying that they killed his son. It was "quite a wrestling match," and it took multiple officers to place Mr. Thayne in handcuffs.

Mr. Thayne contends that Officer Antoine kneed him in the side as he went to the ground after being pulled out of his car, Officer Martin landed on top of Mr. Thayne, Officer Haws kneeled on Mr. Thayne's legs while he was on the ground, and Officer Edwards grabbed his head, lifted it, and slammed it into the ground, all while no officer was trying to handcuff him. Mr. Thayne further contends that he did not resist arrest. But Mr. Thayne's contentions that he did not resist arrest and that Officer Edwards lifted Mr. Thayne's head and slammed it into the ground are plainly belied by the record. Mr. Thayne testified that he does not remember "a whole lot" of what occurred from the time officers pulled him out of his car until he was sat up and handcuffed, "other than the pressure." ECF No. 44-1 at 111. He testified that he does not remember the specifics of what occurred as the officers were trying to put him in handcuffs. *Id.* 111–12. He testified that he is "sure" that he lifted his head up and that he "probably" did so. *Id.* at 103, 105.

A review of the dash camera footage does not reveal that Officer Edwards grabbed Mr. Thayne's head, lifted it, and slammed it into the ground. Rather, Mr. Thayne can be seen lifting his head—as he confirmed he did during his deposition—and Officer Edwards can be seen pinning Mr. Thayne's head back onto the ground. The dash camera footage further reveals the "wrestling match" in which the officers were engaged to place handcuffs on Mr. Thayne. In short, the dash camera footage does not support Mr. Thayne's contention that he was not resisting arrest. His conclusory statement that he was not resisting is unavailing when he testified that he did not remember what happened on the ground and would refer to the dash camera video for this information. *See* ECF No. 44-1 at 109. Indeed, Mr. Thayne's version of events appears to be based on his interpretation of the dash camera footage rather than his independent recollection of the event. The footage, viewed in conjunction with the Officer Defendants' deposition testimony, confirms that Mr. Thayne was resisting arrest by keeping his body tense, resisting the officers'

18

attempts to pull his arms out to handcuff him, kicking and flailing his legs, lifting his head, and trying to move into a fetal position. Although the Officer Defendants used a substantial amount of force to handcuff Mr. Thayne, such force was required by the danger presented and Mr. Thayne's resistance. Accordingly, the second *Graham* factor also weighs against Mr. Thayne.

> 3)   Active Resistance to or Evasion of Arrest

Under the third *Graham* factor, "the relevant inquiry is whether the [force used by the officers] was reasonable and proportionate given [the arrestee's] resistance." *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016). When evaluating the third *Graham* factor, the court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use[] of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1171 (10th Cir. 2021) (citation omitted).

The third *Graham* factor weighs against Mr. Thayne for the same reasons that the second *Graham* factor weighs against him. The dash camera footage and the Officer Defendants' statements contradict Mr. Thayne's contention that he did not resist arrest. No reasonable jury could find that Mr. Thayne was not resisting arrest and that the Officer Defendants used excessive force in attempting to stop a driver whom they suspected of being under the influence and who ignored officer commands, appeared as though he would drive onto the highway, refused to put his hands behind his back, kicked and flailed his legs, and lifted his head up during the struggle to handcuff him.

In sum, all three *Graham* factors weigh against Mr. Thayne. The court concludes that no reasonable jury could find that the Officer Defendants' conduct was objectively unreasonable or that the Officer Defendants employed greater force than was reasonably necessary under the circumstances. In the absence of a constitutional violation, the Officer Defendants are entitled to

qualified immunity and summary judgment on Mr. Thayne's third cause of action. *See Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015) ("Failure on either [qualified immunity] element is fatal to the plaintiff's claims.").[8]

---

[8] Even if Mr. Thayne had satisfied his burden to establish a constitutional violation supporting his third cause of action for excessive force, he has failed to demonstrate that the constitutional right at issue was clearly established under the Tenth Circuit case law to which he has cited. A right is clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Mr. Thayne has cited four Tenth Circuit cases to satisfy the clearly established law prong of his qualified immunity burden. None of them are "on point."

Mr. Thayne cites *Casey v. City of Federal Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007) (citation omitted), for the proposition that "an officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as [he or] she did." But here, the court found under the *Graham* factors that there were substantial grounds for the Officer Defendants to conclude that there was a legitimate justification for acting as they did, based on the severity of the suspected crime, Mr. Thayne's failure to follow officer commands, and his resistance to arrest.

Mr. Thayne also relies upon *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1193 (10th Cir. 2001), which held that "[w]here a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use." But as noted above, Mr. Thayne was resisting the Officer Defendants' show of force, and the Officer Defendants had reasonable cause to believe that Mr. Thayne posed a danger to themselves and others.

Mr. Thayne relies most substantially on *Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991). In *Dixon*, officers were not entitled to qualified immunity or summary judgment because their use of force in kicking an arrestee for the second time, striking the arrestee with a flashlight, and choking and beating an arrestee after "he had already been frisked, had his hands up against the van with his back to the officers, and was not making any aggressive moves or threats" was unreasonable. *Id.* at 1463. Here, in contrast, the Officer Defendants continued to use force on Mr. Thayne because he would not move his hands behind his back to be handcuffed, was resisting arrest, and was making aggressive moves and comments toward them.

Finally, Mr. Thayne cites *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) for the proposition that "[a]lthough use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not." But Mr. Thayne was not subdued. He refused to put his hands behind his back so that the Officer Defendants could handcuff him, he

### III.     Fifth Cause of Action: Substantive Due Process Related to Evidence Tampering

Defendants argue that they are entitled to qualified immunity on Mr. Thayne's fifth cause

of action because he has failed to establish a violation of his substantive due process rights as his

claim relates to the alleged tampering with Mr. Thayne's urine sample.[9] Mr. Thayne asserts a *Brady*

---

tried to move into the fetal position, he kicked and flailed his legs, and he lifted his head up. Indeed, it took multiple officers to place Mr. Thayne in handcuffs because of the force with which he was resisting arrest. Thus, the Officer Defendants' use of force was justified here.

[9] Defendants also argue that they are entitled to qualified immunity on Mr. Thayne's fifth cause of action because he has failed to establish a violation of his substantive due process right as his claim relates to allegations of malicious prosecution, unlawful seizure, excessive force, destruction of Mr. Thayne's cell phone video footage, and damage to the interior of Mr. Thayne's car and cell phone. As previously discussed, *see supra* Section I, because Mr. Thayne has failed to raise any arguments related to malicious prosecution, unlawful seizure, or damage to his car, or sufficiently address and support his claim that the Officer Defendants tampered with and damaged his cell phone, he has failed to meet his qualified immunity burden, and Defendants are entitled to qualified immunity and summary judgment on these bases. The court accordingly does not consider such allegations in the context of his substantive due process claim.

Moreover, a malicious prosecution claim is not properly addressed under the substantive due process protections of the Fourteenth Amendment, *Becker v. Kroll*, 494 F.3d 904, 918 (10th Cir. 2007) ("[T]he unavoidable construction of *Albright [v. Oliver*, 510 U.S. 266 (1994)] is that no § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment."), and an unlawful seizure claim is better addressed under the Fourth Amendment, *Turner v. Houseman*, 268 F. App'x 785, 789 (10th Cir. 2008) (unpublished) ("[T]he Fourth Amendment protects a person's liberty interests under the constitution by ensuring that any arrest or physical incarceration attendant to a criminal prosecution is reasonable . . . [t]he more general [procedural and substantive] due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in this context." (quoting *Becker*, 494 F.3d at 919)).

Additionally, to the extent that Mr. Thayne's substantive due process claim is based on the Officer Defendants' alleged excessive use of force, it is improper. *See Graham*, 490 U.S. at 395 ("*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). The court has considered the alleged excessive use of force under the Fourth Amendment in the preceding section. *See supra* Section II.

violation and maintains that he has established a violation of his substantive due process rights based on the alleged tampering with his urine sample. In response to Mr. Thayne's asserted *Brady* violation, Defendants argue that the claim is untimely and that Mr. Thayne should not be granted leave to amend to include the claim in his complaint because of undue delay, substantial prejudice, and futility. The court considers the alleged *Brady* violation and substantive due process claim in turn.

    A.  *Brady* Violation

For the first time in this litigation, Mr. Thayne asserts a *Brady* violation in his response to Defendants' motion for summary judgment. His *Brady* claim is based on Defendants' alleged possession of and failure to turn over recordings from Officer Haws's dash camera and 911 calls from the December 17, 2017 incident, in connection with the state charges brought against Mr. Thayne following that incident. The "liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a) . . . does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004). Nevertheless, the Tenth Circuit has stated that "a plaintiff should not be prevented from pursuing a valid claim just because []he did not set forth in the complaint a theory on which []he could recover, 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.'" *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991) (citation omitted). Thus, in the Tenth Circuit, "[i]ssues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to [Federal Rule of Civil Procedure] 15." *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998). The court accordingly considers Mr. Thayne's newly-asserted *Brady* violation claim as a request to amend his complaint.

"[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971). Still, Rule 15 provides that "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). In discussing the contours of Rule 15(a)(2), the Supreme Court has stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). As discussed below, for reasons of undue delay, undue prejudice, and futility, the court will not permit Mr. Thayne to amend his complaint to include a *Brady* violation claim.

### 1)   Undue Delay

"[D]enial of leave to amend is appropriate 'when the party [seeking amendment] has no adequate explanation for the delay.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (citation omitted). The Tenth Circuit has observed that "courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987). Here, Mr. Thayne has provided no explanation as to why he did not assert his *Brady* violation until the summary judgment stage of litigation. Further, Mr. Thayne has possessed the recordings that are the subject of his *Brady* violation claim since November 5, 2019, and fact discovery closed on September 28, 2020. Yet Mr. Thayne raised his *Brady* violation claim for the first time in his opposition brief to Defendants' motion for summary judgment on April 8, 2021. Mr. Thayne provides no explanation for his substantial delay in light of his apparent awareness of

23

the facts on which his *Brady* violation claim is based. This undue delay cuts against Mr. Thayne's request to amend his complaint.

    2)  Undue Prejudice

   Defendants also argue that allowing Mr. Thayne to amend his complaint to include his *Brady* violation claim would substantially prejudice them. Defendants argue that "[n]either the Defendants nor Mr. Thayne conducted discovery on a *Brady* claim" (ECF No. 59 at 37), thus prompting the need to reopen discovery, which would derail the years of litigation in this case.

   In assessing whether to grant leave to amend under Rule 15, "[c]ourts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Minter*, 451 F.3d at 1208 (citation omitted). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* Mr. Thayne's *Brady* violation claim is based on Defendants' alleged possession of and failure to turn over recordings from Officer Haws's dash camera and 911 calls from the December 17, 2017 incident. Although the underlying facts of these recordings do not present "new" subject matter—indeed, Mr. Thayne's complaint is based upon the occurrences of December 17, 2017—whether there was a *Brady* violation in Mr. Thayne's related criminal proceedings arising from the failure to provide these recordings is an entirely new issue. Permitting amendment would unfairly impact Defendants and their ability to prepare a defense to this claim, especially since no discovery was conducted regarding a potential *Brady* violation. And, as noted above, although Mr. Thayne obtained these recordings in November of 2019 and fact discovery closed in September of 2020, Mr. Thayne is only just now raising this alleged *Brady* violation. The prejudice to Defendants by permitting amendment at this late stage of the proceedings also weighs in favor of denying leave to amend.

3)      Futility

This court "may deny leave to amend where amendment would be futile." *Jefferson Cnty.*

*Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). "A

proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any

reason, including that the amendment would not survive a motion for summary judgment." *Watson*

*ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001). Here, amendment would be

futile.

Defendants argue that Mr. Thayne cannot establish a *Brady* violation because he did not

proceed to trial in the underlying criminal case. In support of this argument, Defendants cite *Becker*

*v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007), which held that because a plaintiff "never proceeded

to trial, . . . she [could not] therefore rest her § 1983 claims on a *Brady* violation." In *Becker*, the

criminal charges against the plaintiff were dismissed, but not pursuant to a plea agreement. *Id.* at

909. In contrast, here, charges against Mr. Thayne for driving under the influence and for

interference with an arresting officer were dismissed pursuant to a plea agreement, pursuant to

which Mr. Thayne pled guilty to "fail[ing] to stop or respond at command of police." ECF No. 44-

28 at 2. And the Tenth Circuit has recognized *Brady*'s applicability to exculpatory evidence prior

to the entry of a plea. *See United States v. Dahl*, 597 F. App'x 489, 490 (10th Cir. 2015)

(unpublished); *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005) (unpublished).

But regardless of whether a *Brady* claim arising in the context of a guilty plea is cognizable,

amendment would be futile here because Mr. Thayne has failed to provide sufficient evidentiary

support for his *Brady* claim. Mr. Thayne makes a bald and conclusory argument that "[t]he

Defendants possessed the Haws Dash Camera and 911 recordings[;] Thayne requested this

material as part of his discovery in his criminal proceedings[;] [and] [t]he Defendants failed to

25

provide this material to the prosecutor for disclosure." ECF No. 55 at 31. But Mr. Thayne fails to explain how the Defendants in this case—the Officer Defendants and Pleasant Grove—are connected to the alleged *Brady* violation arising in a criminal case filed by the Utah County Attorney's Office. Mr. Thayne has had the full benefit of discovery and more than sufficient time to assert and support this claim. He has failed to do so. Because Mr. Thayne's *Brady* claim would not survive a motion for summary judgment, amendment would be futile.

In short, because of undue delay, prejudice, and futility, the court denies Mr. Thayne leave to amend his complaint to assert a *Brady* violation against Defendants and will not consider this claim raised for the first time in response to Defendants' motion for summary judgment.

B.      Substantive Due Process Claim

Defendants seek qualified immunity on Mr. Thayne's substantive due process claim, arguing that Mr. Thayne cannot state a cognizable claim based on the alleged tampering with his urine sample because he did not proceed to trial in his underlying criminal case. And even if Mr. Thayne could assert a substantive due process violation, Defendants argue that there is no evidence that the Officer Defendants tampered with the urine sample. Mr. Thayne responds that the inconsistency between the hospital records, initial urine test, and the state laboratory results, the absence of a chain of custody for the urine sample while it was in Defendants' possession, and the near month-long delay between the collection and testing of the sample "raise a strong inference that the Defendants tampered with the sample prior to testing." ECF No. 55 at 34. Thus, Mr. Thayne argues that whether the Officer Defendants tampered with the urine sample "is a question for the jury." *Id.*

Mr. Thayne has failed to respond to Defendants' argument that he cannot establish a substantive due process violation based on the use of alleged fabricated evidence in his underlying

criminal case when he did not proceed to trial. It is unclear from Mr. Thayne's Complaint whether he asserts his substantive due process claim based on the use of allegedly fabricated evidence in securing a conviction against him and/or in bringing criminal charges against him. But in his response brief, Mr. Thayne argues that "[w]here a plaintiff alleges state authorities knowingly used perjured testimony or false evidence *to secure a conviction*, he has alleged deprivation of his constitutional due process." ECF No. 55 at 33 (emphasis added). In support of this statement, Mr. Thayne cites two cases: a Supreme Court case and a Third Circuit case. Both cases rest their holdings on the use of falsified evidence to obtain a conviction: *Pyle v. Kansas*, 317 U.S. 213, 216 (1942) (holding that the knowing use of perjured testimony to obtain a conviction implicates a defendant's due process rights) and *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) (holding that "if a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted"). Accordingly, the court addresses Mr. Thayne's substantive due process claim as it relates to the use of fabricated evidence to obtain a conviction.

Here, Mr. Thayne was not convicted of anything related to the allegedly fabricated urine sample. Mr. Thayne did not proceed to trial; he pled guilty to "fail[ing] to stop at command of police" (ECF No. 44-28 at 2) pursuant to a plea deal in which the charge to which the alleged fabricated urine sample pertained—driving under the influence of alcohol and/or drugs—was dismissed. The case law Mr. Thayne has cited does not recognize a substantive due process claim asserted on such a basis.

To the extent that Mr. Thayne asserts his substantive due process claim based on the alleged use of fabricated evidence to bring criminal charges against him—and Mr. Thayne does not make

this clear in either his Complaint or response brief—it is unclear in the Tenth Circuit whether such conduct implicates the due process clause. *Compare Warnick v. Cooley*, 895 F.3d 746, 753 (10th Cir. 2018) ("We are 'aware of[] no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution.'" (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 281 (Scalia, J., concurring))), *Est. of Papadakos v. Norton*, 663 F. App'x 651, 658 (10th Cir. 2016) (unpublished) (concluding that arrestee "had no substantive due process right under the Fourteenth Amendment to remain free from being arrested for, or charged with, a crime based on the allegedly coerced statements of a third party" and affording defendants qualified immunity on the Fourteenth Amendment claim), *Becker*, 494 F.3d at 918 ("We think the unavoidable construction of *Albright* is that no § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment."), *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) ("In *Albright[]*, a plurality of the Supreme Court held that the Fourth Amendment governed 'pretrial deprivations of liberty.' Fourteenth Amendment substantive due process standards have no applicability." (citation omitted)), *Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004) ("[T]he Supreme Court held that a defendant's due process rights are implicated when the state knowingly uses false testimony to obtain a conviction . . . ." (citing *Pyle*, 317 U.S. at 216)), *and Advantageous Cmty. Servs., LLC v. King*, No. 1:17-cv-00525, 2018 WL 1415184, at *8 (D.N.M. Mar. 21, 2018) (unpublished) ("The fabrication of evidence—like the suppression of exculpatory evidence—only matters if it deprives any person of a fair trial and thereby deprives the person of liberty or property."), *with Pierce*, 359 F.3d at 1299 ("There is no moral, constitutional, common law, or common sense difference between providing phony evidence in support of an arrest and providing phony evidence in support of continued confinement

28

and prosecution."), *and Klen v. City of Loveland, Colo.*, 661 F.3d 498, 516 (10th Cir. 2011) ("Use of an indictment based on perjured testimony to bring charges, for example, itself represents a denial of due process.").

In a case where an arrestee alleged that the prosecutor fabricated evidence that was used against him in a prosecution for murder for which he was convicted and later acquitted, the Tenth Circuit recently held that "[t]he right not to be deprived of liberty as a result of the fabrication of evidence by a government officer is a general constitutional rule identified in decisional law." *Truman v. Orem City*, 1 F.4th 1227, 1240–41 (10th Cir. 2021). In so holding, the Tenth Circuit cited but did not discuss a Ninth Circuit case, which held that "[w]hile *Pyle* does not deal specifically with the bringing of criminal charges, as opposed to the securing of a conviction, we find that the wrongfulness of charging someone on the basis of deliberately fabricated evidence is sufficiently obvious, and *Pyle* is sufficiently analogous, that the right to be free from such charges is a constitutional right." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001). The Tenth Circuit also stated in a footnote that "[a]n acquitted plaintiff may have been deprived of liberty due to fabricated evidence if there is a reasonable likelihood that without the fabricated evidence, the plaintiff would not have been criminally charged." *Truman*, 1 F.4th at 1236 n.5. But the Tenth Circuit did not expressly state that the use of fabricated evidence to bring criminal charges gives rise to a cognizable claim under the substantive due process clause.

Other circuits that have addressed this issue have found that due process can be denied based on the use of fabricated evidence to bring charges. *E.g.*, *Devereaux*, 263 F.3d at 1075; *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016) ("[W]e hold that an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due

process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged.").

But even assuming that Mr. Thayne could assert a substantive due process violation based on the alleged tampering with the urine sample to secure charges against him, Mr. Thayne has failed to provide sufficient evidence in support of his claim to withstand summary judgment. Mr. Thayne notes that his "hospital records after the incident did not reveal drug use at that time." ECF No. 55 at 33. However, as Defendants note, it does not appear that the hospital records reference drug use or methamphetamine and THC-COOH. ECF No. 44-22. Thus, the hospital records are not necessarily inconsistent with the toxicology report from the Utah Department of Health that shows Mr. Thayne's urine tested positive for methamphetamine and THC-COOH. *See* ECF No. 44-21. There does appear to be an inconsistency in that Mr. Thayne's urine initially tested positive for THC and barbiturates, rather than THC and methamphetamine. *See* ECF Nos. 52-1 at 12; 55-3. But Defendants do not address this apparent inconsistency, apart from asserting that field tests are not as accurate as laboratory tests.

Mr. Thayne otherwise relies upon inferences and speculation to support his claim that Defendants tampered with his urine sample. He states that records "show an evidence incident with the urine sample before it was provided to the lab," and "the State lab noted problems with the sample provided by the Defendants." ECF No. 55 at 34. But Defendants have provided an affidavit from an Administrative Assistant for the Pleasant Grove Police Department that explains that the "*Evidence Incident" reflected on the Law Incident Table merely "indicates that the property was booked into evidence." ECF No. 59-1 ¶ 9. Further, Mr. Thayne has provided no evidence to support his claim that the need to correct the subject name and the indication that blood and urine were submitted were the result of any fault on the part of Defendants rather than, for

30

example, the fault of the laboratory. Mr. Thayne has similarly failed to produce any evidence to support his assertion that the urine container was not sealed properly—the toxicology reports merely indicate that the inner bag of the sample needed to be dated and initialed, not that the sample was not sealed properly. ECF No. 55-4. Finally, Mr. Thayne argues that Defendants' failure to provide a chain of custody associated with the urine sample and near month-long delay in submitting the urine sample for screening further "raise a strong inference that the Defendants tampered with the sample prior to testing." ECF No. 55 at 34. The court does not agree. Even construing the foregoing allegations and evidence in the light most favorable to Mr. Thayne, the court does not find that a reasonable jury could conclude that Defendants tampered with Mr. Thayne's urine sample.

In short, even if Mr. Thayne had clearly asserted and could establish a violation of substantive due process based on the use of fabricated evidence in bringing criminal charges against him, he has failed to provide sufficient evidence supporting his claim on which a rational jury could find in his favor. Accordingly, Defendants are also entitled to summary judgment on this claim.

## IV.   Eighth Cause of Action: Unconstitutional Policies, Practices, and Procedures; Failure to Monitor and Train

Defendants argue that Mr. Thayne has failed to establish a constitutional violation on the part of the Officer Defendants, and this entitles Pleasant Grove to summary judgment on Mr. Thayne's eighth cause of action. And even if Mr. Thayne could establish a constitutional violation, Defendants contend that Mr. Thayne cannot establish municipal liability for Pleasant Grove because Mr. Thayne has failed to provide evidence of a municipal policy or custom.

Absent any constitutional violation on the part of the Officer Defendants, Mr. Thayne's municipal liability claim against Pleasant Grove fails. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). And even if Mr. Thayne had established a constitutional violation, his municipal liability claim against Pleasant Grove still fails.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. "Instead, 'the government as an entity' may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Waller v. City & County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell*, 436 U.S. at 694). "Thus, to establish municipal liability, a plaintiff must first demonstrate a 'municipal policy or custom.'" *Id.* A municipal policy or custom may be established by one of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation, internal quotation marks, and brackets omitted). "After establishing a municipal policy or custom, a plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Waller*,

932 F.3d at 1284 (citation omitted).[10] Finally, for claims of inadequate "training, or other supervisory practices, a plaintiff 'must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Defendants argue that Mr. Thayne has failed to identify or provide evidence of a Pleasant Grove policy or custom required to establish municipal liability. Mr. Thayne responds that "Defendant Pleasant Grove should be held liable because of their failure to train and monitor" (ECF No. 55 at 36), which is the fifth type of municipal policy or custom set forth above under *Bryson*. Without citation to any authority, Mr. Thayne argues that "Pleasant Grove's [1] failure to address the violence of the Defendants and [2] its failure to provide sufficient training and supervision regarding the preservation of evidence form the basis for the municipality's liability." *Id.* at 37.[11] Both arguments fail.

A.  Failure to Properly Discipline

Mr. Thayne argues that Defendants' "excessive force is clear on the Martin video, yet no Defendant was disciplined for that violence," and this failure to discipline amounts to "deliberate indifference to the injuries suffered by the people in the Pleasant Grove jurisdiction." ECF No. 55 at 36. But this argument fails to establish municipal liability because "a subsequent failure to

---

[10] The court does not address the causation requirement of municipal liability, as neither party has meaningfully briefed the issue.

[11] In support of his position that Pleasant Grove failed to train and supervise officers regarding the preservation of evidence, Mr. Thayne references the alleged "destruction of [his] phone." ECF No. 55 at 36. However, as the court noted above, *see supra* Section I, Mr. Thayne has failed to satisfy his two-part qualified immunity burden as it relates to his substantive due process claim for damage to his cell phone. Accordingly, this allegation cannot form the basis of municipal liability.

discipline cannot be the cause of a prior injury." *Waller*, 932 F.3d at 1290. Thus, no reasonable jury could find that Mr. Thayne's injury on December 17, 2017 was caused by Pleasant Grove's subsequent failure to discipline the Officer Defendants for their alleged excessive force against Mr. Thayne.

      B.     Failure to Train and Supervise

Mr. Thayne's argument that "Defendants have repeatedly failed to document, preserve and secure evidence," which amounts to "clear failures to adequately train and supervise these Defendants" (ECF No. 55 at 36–37), also fails to establish municipal liability. "[F]or claims of inadequate hiring, training, or other supervisory practices, a plaintiff 'must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" *Waller*, 932 F.3d at 1284 (quoting *Brown*, 520 U.S. at 407). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Waller*, 932 F.3d at 1284 (citation omitted). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id.* (citation omitted).[12]

---

[12] The Tenth Circuit has stated that "[e]vidence of a pre-existing pattern of violations is only unnecessary in a narrow range of circumstances, however rare, in which the unconstitutional consequences of a failure to train are highly predictable and patently obvious." *Waller*, 932 F.3d at 1285 (internal quotation marks and citation omitted). Neither party addressed this exception in their briefing or at oral argument, and so the court does not address it here.

Mr. Thayne has not demonstrated a pattern of similar constitutional violations required to establish deliberate indifference. Mr. Thayne points to only a single incident related to Defendants' alleged failure to document, preserve, and secure evidence—Officer Haws's suspension for failure to properly account for evidence. ECF No. 55 at 36. The timeline of Officer Haws's suspension is unclear. In his deposition, Officer Haws testified that the suspension occurred in "February or March of 2020," but it is not apparent when the conduct giving rise to the suspension occurred. ECF No. 44-5 at 16. The incident involving Mr. Thayne occurred in December of 2017. "Incidents that occurred subsequent to the incident at issue in this case" cannot provide notice of a deficiency in a training program and thus cannot be used as evidence that, prior to the incident involving Mr. Thayne, Pleasant Grove "decisionmakers . . . deliberately chose[ ] a training program that w[ould] cause violations of constitutional rights." *Waller*, 932 F.3d at 1286 (citation omitted); *see also Connick*, 563 U.S. at 64 (noting that deliberate indifference generally requires "proof of a *pre-existing* pattern of violations" (emphasis added)).[13]

Moreover, even assuming Officer Haws's failure to account for evidence in another matter could qualify as a similar prior incident related to a failure to account for evidence, the Tenth Circuit has "found no cases suggesting that a single prior incident can constitute a 'pattern' of conduct giving rise to an inference of deliberate indifference." *Waller*, 932 F.3d at 1287. To the

---

[13] In his response brief, Mr. Thayne mentions another apparent incident of excessive force involving Officers Antoine and Edwards. (ECF No. 55 at 19–20). Mr. Thayne does not include this incident in his argument pertaining to Pleasant Grove's municipal liability. *See id.* at 34–37. Even if Mr. Thayne had done so, the incident appears to be too dissimilar from the instant case to establish a pattern of constitutional violations. *See* ECF No. 44 at 49. Moreover, the Tenth Circuit has found a single incident insufficient to constitute a pattern of conduct supporting an inference of deliberate indifference. *Waller*, 932 F.3d at 1287.

contrary, the Tenth Circuit has "expressly held that '[o]ne prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations.'" *Id.* (quoting *Coffey v. McKinley County*, 504 F. App'x 715, 719 (10th Cir. 2012) (unpublished)).

In short, in the absence of any constitutional violation on the part of the Officer Defendants, the court grants summary judgment in favor of Pleasant Grove. And even if Mr. Thayne could establish a constitutional violation, Pleasant Grove would still be entitled to summary judgment because Mr. Thayne has failed to establish the requisite policy or custom necessary to impose municipal liability.

## CONCLUSION AND ORDER

Based upon the foregoing, Defendants' Motion for Summary Judgment (ECF No. 44) is HEREBY GRANTED. The court will enter judgment in favor of Defendants.

DATED September 2, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

36